Willie Frank CAMPBELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–01–233–CR.

Court of Appeals of Texas,
Waco.

Jan. 8, 2003.

Order Overruling Rehearing
Jan. 14, 2004.

Concurring and Dissenting Opinions on
Denial of Rehearing Jan. 14, 2004.

John M. Hurley, Waco, for appellant.

John Segrest, McLennan County Dist. Atty., James Wiley, McLennan County Asst. Dist. Atty., Waco, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

Willie Frank Campbell was indicted for using a handgun (a deadly weapon) to threaten Waco Police Officer Benjamin Rush with imminent bodily injury while Rush was attempting to arrest Campbell—a first degree felony. TEX. PEN.CODE ANN. § 22.02(a)(2), (b)(2) (Vernon 1994). A jury convicted Campbell, and he was sentenced to thirty-three years in prison. He brings four issues on appeal, asserting:

1. The evidence is legally insufficient to support the conviction.

2. His due process rights were violated because section 22.02 and the indictment refer to assault on a "public servant," but the indictment, charge, and verdict form refer to assault on a "peace officer" and a "police officer," and therefore the jury did not find him guilty of the offense as alleged.

3. The trial court's deadly weapon finding should be set aside because of the mistake complained about in issue two.

4. The trial court erred by denying a jury charge instruction on a lesser-included offense of resisting arrest using a deadly weapon, a third-degree felony.

We will reverse the judgment based on Campbell's issue about the lesser-included offense.

*Facts*

Campbell was wanted on outstanding warrants. He was spotted, on foot, by law enforcement officers. Officer Rush testified that he chased Campbell, and when he caught up to him, Campbell had his hands in his pockets as though he was attempting to discard something; he dropped something on the ground. Then Rush grabbed him around the upper body and tried to pull him down. Campbell resisted, "kind of hump[ed] over," and said "get back." Then, according to Rush, Campbell "kind of start[ed] straightening back up and [he had] a gun in his hand." Rush testified:

> He's got the gun in his hand and I've got him around his arm like this so he-I'm kind of-I'm squeezing him, I'm like, "I've got to get away from him now," because I can't defend myself because my arms are up around the top of him. So he's got the gun in his hand and he starts-he's trying to turn to his left. When he turned to the left I just let him keep coming and when he comes to the left, he's got the gun up like this. ... I just keep coming with him and I just kind of

just shove him into the wall. ... I tried to get my distance from him ....

Campbell argues that he never threatened the officer, but rather at most attempted to do so. Campbell testified that when Rush "bearhugged" him from behind, he tried to get away. Campbell bent over, and Rush was on Campbell's back. Finally, Rush pushed Campbell away. Campbell testified: I "had a gun in my hand and I was running down the breezeway and that's when I threw [the gun] on top of the roof." He said he pulled out the gun only as he began to run, and his purpose was to get rid of it. He denied ever saying "get back."

After the struggle with Rush, Campbell ran, discarding the gun along the way. Rush again pursued Campbell and eventually caught and arrested him. The gun was retrieved, and there was evidence it was not loaded.

### Legal Sufficiency of the Evidence

In reviewing a legal sufficiency challenge, we view all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Lane v. State,* 933 S.W.2d 504, 507 (Tex. Crim.App.1996) (citing due process standard from *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We consider all the evidence, both direct and circumstantial, including evidence improperly admitted. *Logan v. State,* 48 S.W.3d 296, 299 (Tex.App.-Texarkana 2001) (citing *Johnson v. State,* 871 S.W.2d 183, 186 (Tex.Crim.App.1993)), *aff'd,* 89 S.W.3d 619 (Tex.Crim.App.2002).

As indicted, the statutory elements of aggravated assault applicable in this case are:

1. intentionally or knowingly threatening another with imminent bodily injury (the assault);

2. using or exhibiting a deadly weapon during the commission of the assault; and

3. committing the assault against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty

TEX. PEN.CODE ANN. § 22.02(a)(2), (b)(2). Campbell was not charged with the alternate manner of committing this offense, *i.e.,* causing serious bodily injury during an assault on a public servant (no deadly weapon element). *Id.* § 22.02(a)(1).

Although Campbell refuted some of Rush's testimony, there was evidence that Campbell and Rush scuffled and that Campbell produced a gun and said "get back." When we view all the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found beyond a reasonable doubt that Campbell intentionally threatened Rush with imminent bodily injury and, in the process, used or exhibited a gun. *Lane,* 933 S.W.2d at 507. We overrule the issue.

### Due Process

Campbell claims that his due process rights were violated because the statute and the indictment refer to assault on a "public servant," whereas the indictment, charge, and verdict form refer to assault on a "peace officer" and "police officer." The statute reads in part: "the offense is a felony of the first degree if the offense is committed ... against a person the actor knows is a **public servant** ...." TEX. PEN. CODE ANN. § 22.02(b)(2). The indictment reads in part: "that the said Benjamin Rush was then and there a **public servant,** to-wit: a **police officer** ...." The charge reads in part: Campbell is charged with aggravated assault "on a **public servant** ...," followed by "[s]uch assault is aggra-

vated assault when committed upon a **peace officer** in the lawful discharge of official duty when the person committing the assault knows or has been informed that the person assaulted is a **public servant.**" The charge continues with a set of instructions referring multiple times to **"peace officers"** and the presumption that the assaulter knew the victim was a peace officer if the victim was wearing a distinctive uniform. The application paragraph at the end of the charge repeats parts of the indictment including the phrase "a **public servant,** to-wit: a **police officer,**" and concludes "then you will find the defendant guilty of aggravated assault on a **peace officer,** as charged in the indictment." The verdict form states: "We, the jury, find the defendant ... guilty of the offense of aggravated assault of a **peace officer,** as alleged in the indictment."

The statute uses the term "public servant." The indictment uses two terms: "public servant" and "police officer." The charge uses three terms: "public servant," "police officer," and "peace officer." The verdict form uses the term "peace officer." Campbell says this is constitutional error requiring analysis under Rule 44.2(a). TEX.R.APP. P. 44.2(a).

None of the terms are defined in the charge. Section 1.07 of the Penal Code provides definitions of "peace officer" and "public servant."

> (36) "Peace officer" means a person elected, employed, or appointed as a peace officer under Article 2.12, Code of Criminal Procedure, Section 51.212 or 51.214, Education Code, or other law.
>
> . . .
>
> (41) "Public servant" means a person elected, selected, appointed, employed, or otherwise designated as one of the following, even if he has not yet qualified for office or assumed his duties:

> (A) an officer, employee, or agent of government;
>
> (B) a juror or grand juror; or
>
> (C) an arbitrator, referee, or other person who is authorized by law or private written agreement to hear or determine a cause or controversy; or
>
> (D) an attorney at law or notary public when participating in the performance of a governmental function; or
>
> (E) a candidate for nomination or election to public office; or
>
> (F) a person who is performing a governmental function under a claim of right although he is not legally qualified to do so.

TEX. PEN.CODE ANN. § 1.07(36), (41) (Vernon 1994).

■ The use of two terms not contained in the statute and the mixing of two or three terms in the various instruments used at trial can result in confusion. However, we do not think this is a due process error or even a "variance" question. *See Gollihar v. State,* 46 S.W.3d 243 (Tex. Crim.App.2001) (discussing variances between the indictment and the evidence at trial). Furthermore, any complaint about the adequacy of the indictment was waived by failure to object. TEX.CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon Supp.2002).

■ Rather, this is simple charge error which was not objected to at trial; we review unpreserved charge error in a criminal case for "egregious harm." *Huizar v. State,* 12 S.W.3d 479, 484–85 (Tex. Crim.App.2000); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (opinion on reh'g). Errors that result in egregious harm are those which affect "the very basis of the case," deprive the defendant of a "valuable right," or "vitally affect a defensive theory." *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996) (cit-

ing *Almanza*, 686 S.W.2d at 172). In deciding whether there is egregious harm, we look to (1) the charge itself, (2) the state of the evidence, including what issues were contested, and the weight of the probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *Hutch*, 922 S.W.2d at 171 (citing *Bailey v. State*, 867 S.W.2d 42, 43 (Tex. Crim.App.1993) (citing *Almanza* )).

■ The State argues that a "public servant" is a broad term including "peace officers" and "police officers." Under the definitions in section 1.07, we agree. Furthermore, whether Rush was a public servant, a police officer, a peace officer, or some combination of these, was never an issue at trial. In addition, the indictment, charge, and verdict form, taken as a whole, sufficiently informed the jury that they had to find that Rush was a public servant carrying out his official duties, and that Campbell knew it. We conclude that the use of several—at least overlapping—terms in the charge and verdict form did not affect "the very basis of the case," deprive the defendant of a "valuable right," or "vitally affect a defensive theory." *Hutch*, 922 S.W.2d at 171. We overrule the issue.

### Deadly Weapon Finding

■ The Code of Criminal Procedure requires that when there is an "affirmative finding" by the factfinder that the defendant used a "deadly weapon" during the commission of an offense, the trial court must enter the finding in the judgment, and if the deadly weapon is a firearm, that fact shall also be entered. TEX.CODE CRIM. PROC. ANN. art. 42.12 § 3g(a)(2) (Vernon Supp.2001); *Polk v. State*, 693 S.W.2d 391, 396 (Tex.Crim.App.1985). When, as here, a jury is the finder of fact, the trial court may not enter a "deadly weapon" finding

in the judgment unless: (1) the indictment includes an allegation of a "deadly weapon," and the verdict states the defendant is guilty as charged in the indictment, (2) the indictment does not allege "deadly weapon," but does allege a weapon that is per se a deadly weapon, and the verdict states the defendant is guilty as charged in the indictment, or (3) the jury has affirmatively answered a special issue on "deadly weapon" use. *Polk*, 693 S.W.2d at 396; *Davis v. State*, 897 S.W.2d 791, 793 (Tex. Crim.App.1995) (citing *Polk*, 693 S.W.2d at 396). A firearm is per se a deadly weapon. TEX. PEN.CODE ANN. § 1.07(17)(A).

■ Campbell's complaint is built on his third issue which we have overruled. But that aside, the indictment alleged that Campbell used a "deadly weapon, to-wit: a handgun," and the verdict form stated that the jury found Campbell guilty "as alleged in the indictment," thereby satisfying *Polk*. *Polk*, 693 S.W.2d at 396. We overrule the issue.

### Lesser–Included Offense

■ Campbell argues that the jury should have been given an instruction on a lesser-included offense of resisting arrest using a deadly weapon, a third-degree felony. TEX. PEN.CODE ANN. § 38.03(a), (d) (Vernon 1994). A defendant may be convicted of a lesser-included offense. TEX. CODE CRIM. PROC. ANN. art. 37.08 (Vernon 1981). Before the defendant is entitled to have the jury instructed on a lesser-included offense, some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense. *Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex.Crim.App.2000), *cert. denied*, 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001). Furthermore, "[t]he evidence must establish the lesser-included offense as a valid rational alternative to the

charged offense." *Id.* (citing *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex.Crim. App.1993)). The purpose of granting the instruction is to prevent (a) an acquittal even though the jury believed the defendant to be guilty of the lesser-included offense, and (b) a "guilty" finding even though the jury did not believe the defendant committed the greater offense. *Bignall v. State*, 887 S.W.2d 21, 24 (Tex.Crim. App.1994). The policy of the Court of Criminal Appeals is to liberally permit the instruction when warranted. *Id.*

This issue may arise when (1) the evidence refutes or negates the element which establishes the greater offense, or (2) the evidence conflicts about whether the greater or lesser offense was committed. *Saunders v. State*, 840 S.W.2d 390, 391 (Tex.Crim.App.1992). Whether a lesser-included instruction should be given is determined on a case-by-case basis. *Bartholomew v. State*, 871 S.W.2d 210, 212–13 (Tex.Crim.App.1994). "Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge." *Bignall*, 887 S.W.2d at 23.

The predicate issue is whether the other offense is in fact lesser-included. *Mathis v. State*, 67 S.W.3d 918, 925 (Tex. Crim.App.2002). The Code of Criminal Procedure defines lesser-included offenses:

An offense is a lesser-included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

Tex.Code Crim. Proc. Ann. art. 37.09 (Vernon 1981). We note that in the typical situation under article 37.09(1), the greater offense has an "extra" element that the lesser offense does not, *e.g.*, the various "aggravated" statutes which increase the degree of an offense by "adding" an element to the base offense. Tex. Pen.Code Ann. §§ 20.04 (aggravated kidnaping), 22.02 (aggravated assault), 22.021 (aggravated sexual assault), 29.03 (aggravated robbery), 37.03 (aggravated perjury), 49.09 (felony DWI). But when, as here, the contention is made that the facts of the case raise the issue of a lesser-included offense, we must inquire whether the State, in presenting its case to prove the offense charged, presented facts that could constitute the lesser offense. *Bartholomew*, 871 S.W.2d at 212; *Broussard v. State*, 642 S.W.2d 171, 173 (Tex.Crim.App.1982).

As the court reiterated in *Bartholomew*:

Whether one offense bears such a relationship to the offense charged [so as to be considered a lesser included offense] is an issue which must await a case by case determination, both because the statute defines lesser included offenses in terms of the offense charged and because it defines lesser included offenses in terms of the facts of the case.

*Bartholomew*, 871 S.W.2d at 212 (citing *Day v. State*, 532 S.W.2d 302, 315–16 (Tex. Crim.App.1976) (opinion on reh'g)). "It is not a question of whether or not the offense charged is capable of being established on some theory that does not show the lesser included offense." *Broussard*, 642 S.W.2d at 173. Therefore, we apply article 37.09(1) to the evidence adduced at

trial to determine whether Campbell was entitled to a charge on the lesser-included offense of resisting arrest. *See* Tex.Code Crim. Proc. Ann. art. 37.09(1).

■ The key language in resolving this issue is found in subparts "a" and "d" of the resisting arrest statute.[1] The question is whether the elements in these subparts

Aggravated Assault

1. Intentionally or knowingly threatened Rush with imminent bodily injury,

2. committed the crime against Rush knowing that Rush is a public servant who is lawfully attempting to make an arrest, and

3. used or exhibited a deadly weapon.

Tex. Pen.Code Ann. § 22.02(a)(2), (b)(2).

Therefore, to succeed, Campbell must demonstrate that:

1. The evidence that he intentionally or knowingly threatened Rush with imminent bodily injury also establishes that he used force against Rush.

2. The evidence that he committed the aggravated assault knowing that Rush was a public servant lawfully attempting to arrest Campbell also establishes that he intentionally prevented or obstructed Rush from effecting his arrest.

3. The evidence that he used or exhibited a deadly weapon also establishes that he used a deadly weapon.

The Court of Criminal Appeals found resisting arrest to be a lesser-included offense of aggravated assault in *Sutton*, but

are "established by proof of the same or less than all the facts required to establish the commission of the offense charged," *i.e.,* the aggravated assault. *Id.*

According to Campbell's argument, the elements of the two statutes match up this way:

Resisting Arrest

1. By using force against Rush,

2. intentionally prevented or obstructed Rush from effecting an arrest, and

3. used a deadly weapon.

Tex. Pen.Code Ann. § 38.03(a), (d).

not by threat of bodily injury using a deadly weapon as is asserted in this case.[2] *Sutton v. State,* 548 S.W.2d 697, 699 (Tex. Crim.App.1977). Support also comes from *Bell v. State,* where the Court held that reckless conduct is a lesser-included offense of aggravated assault under the facts of that case. *Bell v. State,* 693 S.W.2d 434, 439 (Tex.Crim.App.1985). The defendant fired his weapon into an occupied trailer home. *Id.* at 436. He was indicted for threatening the occupant with imminent bodily injury using a deadly weapon. *Id.* The lesser-included offense was recklessly engaging in conduct that placed another in danger of serious bodily injury. *Id.;* Tex. Pen.Code Ann. § 22.05(a) (Vernon 1994). The Court said the same facts proved the elements of each offense. *Bell,* 693 S.W.2d at 439.

---

**1.** Subpart "a" states in part: "A person commits an offense if he intentionally prevents or obstructs ... a peace officer ... from effecting an arrest ... by using force against the peace officer." Tex. Pen.Code Ann. § 38.03(a) (Vernon 1994). Subpart "d" states: "An offense under this section is a felony of the third degree if the actor uses a deadly weapon to resist the arrest ...." *Id.* § 38.03(d).

**2.** The Court held that when aggravated assault is committed by bodily injury, resisting arrest is a lesser-included offense because the "use of force" element of resisting arrest was proved by the same evidence as that which proved the infliction of bodily injury.

Regarding the second pair of elements, the evidence that shows how the aggravated assault occurred also establishes that Campbell prevented or obstructed Rush from arresting him. Therefore, as for this pair of elements, article 37.09(1) is satisfied.

■ But there is a problem with the first pair of elements, *i.e.,* whether the evidence that Campbell "threatened [Rush] with imminent bodily injury" establishes that he "used force against" Rush. The Penal Code does not provide a definition of "using force against" or of those terms individually. Courts have concluded that non-cooperation with an arrest is not an act of "use of force against" a peace officer under the resisting arrest statute, for example:

- shaking off an arresting officer's detaining grip. *Anderson v. State,* 707 S.W.2d 267, 269 (Tex.App.-Houston [1st Dist.] 1986, no pet.).
- pulling away from an arresting officer after being arrested. *Young v. State,* 622 S.W.2d 99, 100–01 (Tex.Crim.App. [Panel Op.] 1981).
- crawling away from an arresting officer. *Leos v. State,* 880 S.W.2d 180, 181 (Tex.App.-Corpus Christi 1994, no pet).

Thus, refusing to cooperate with being arrested does not constitute resisting arrest by force. However, we have held that evidence of non-cooperation combined with violent swings of the body and a forward movement causing the officer and the defendant to fall off a porch was sufficient to establish resisting arrest. *Bryant v. State,* 923 S.W.2d 199, 206 (Tex.App.-Waco 1996, pet ref'd).

We conclude that the evidence adduced by the State to prove Campbell threatened Rush with imminent bodily harm, *i.e.,* producing a gun, saying "get back," and engaging Rush with physical resistance, also establishes a "use of force against" Rush by Campbell, and not merely non-cooperation or a "pulling away." Therefore, article 37.09(1) is satisfied as to the first pair of elements.

Campbell's final challenge comes with the third pair of elements. The resisting arrest statute requires Campbell to have "used" the gun, whereas under the aggravated assault statute, Campbell could have either "used" or "exhibited" the gun. Thus if the two terms mean something different and the evidence could prove only an "exhibition," then resisting arrest cannot be a lesser-included offense under these facts.

■ The meaning of the terms "use" and "exhibit" in relation to a deadly weapon has been discussed in the context of a deadly weapon finding under article 42.12, § 3g(a). Tex.Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2). In *Patterson v. State,* the Court of Criminal Appeals applied the Code Construction Act as required by the Penal Code.[3] *Patterson v. State,* 769 S.W.2d 938, 940 (Tex.Crim.App.1989); Tex. Pen.Code Ann. § 1.05 (Vernon 1994). Generally, the Court said, in relation to a deadly weapon, the term "use" means to

---

**3.** Section 1.05 of the Penal Code instructs us to: (1) construe the provisions of the code "according to the fair import of their terms, to promote justice and effect the objectives of the code"; and (2) apply, *inter alia,* sections 311.011 and 311.023 of the Code Construction Act. Tex. Gov't Code Ann. §§ 311.011, 311.023 (Vernon 1998). Section 311.011(a) directs us to read words and phrases "in context and construe[ ] [them] according to the rules of grammar and common usage." Section 311.023(1),(4),(5) enables us to consider, when construing a statute, the "object sought to be attained" by the enactment of the statute, the "common law or former statutory provisions, including laws on the same or similar subjects," and the "consequences of a particular construction."

utilize, employ, or apply the deadly weapon to achieve an intended result. *Patterson*, 769 S.W.2d at 941. "Use" includes simple possession if the possession facilitates the commission of the associated felony. *Id.* To "exhibit" a deadly weapon means to consciously show, display, or present for viewing the deadly weapon during the commission of a crime. *Id.* "[O]ne can 'use' a deadly weapon without exhibiting it, but it is doubtful one can exhibit a deadly weapon during the commission of a felony without using it." *Id.* Applying these definitions in the present case, it is clear from the evidence that Campbell exhibited the gun because it was "consciously show[ed], display[ed], or present[ed] for viewing" during the commission of a crime. *Id.* And because "it is doubtful one can exhibit a deadly weapon during the commission of a felony without using it," the jury was not precluded from finding that Campbell "used" the gun. *Id.*

As we have noted, "[a]nything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge." *Bignall*, 887 S.W.2d at 23. The evidence shows that Campbell "used" the gun. *See id.* Producing the gun could be viewed as facilitating Campbell's resisting arrest because it caused Rush to release Campbell, who then fled. Also, by producing the gun, Campbell utilized, employed, or applied it to achieve an intended result. *Id.* Therefore, evidence that Campbell "used" the gun satisfies the third pair of elements.

We conclude that the requirements of article 37.09(1) are met, as the evidence which proved that Campbell committed the aggravated assault also proved the elements of resisting arrest. We believe that a rational jury could have found that Campbell resisted arrest rather than that he assaulted Rush, and the jury should have been given that alternative. *Wesbrook*, 29 S.W.3d at 113.

Having found that the trial court erred in not giving the instruction, we must conduct a harm analysis. When a complaint about an error in the charge is properly preserved—as here by requesting the instruction—reversal is required if the error caused "some" harm to the accused. Tex.Code Crim. Proc. Ann. art. 36.19 (Vernon Supp.2002); *Ovalle v. State*, 13 S.W.3d 774, 786 (Tex.Crim.App.2000) (quoting *Almanza*, 686 S.W.2d at 171). "In the context of *Almanza*, supra, and Article 36.19, supra, the presence of *any* harm, regardless of degree, which results from preserved charging error, is sufficient to require a reversal of the conviction. Cases involving preserved charging error will be affirmed only if *no* harm has occurred." *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim.App.1986).

The Court of Criminal Appeals has held that failure to give a lesser-included instruction is "some" harm because the jury is not given the option to convict on the lesser-included offense. *E.g., Saunders v. State*, 913 S.W.2d 564, 571 (Tex.Crim.App. 1995) (citing *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980)) (danger is that the jury will convict of some offense, *i.e.*, the greater offense, only because of no alternative); *Ross v. State*, 861 S.W.2d 870, 877 (Tex.Crim.App.1992); *Mitchell v. State*, 807 S.W.2d 740, 742 (Tex.Crim.App.1991); *also Jiminez v. State*, 953 S.W.2d 293, 299–300 (Tex.App.-Austin 1997, pet. ref'd). We sustain the issue.

### Conclusion

Having sustained Campbell's issue about the lesser-included offense of resisting arrest, we reverse the judgment and remand the cause for a new trial.

Justice GRAY Dissenting.

TOM GRAY, Justice.

The majority reverses Willie Campbell's conviction because the trial court failed to charge the jury with a lesser-included offense. I disagree with the majority's determination that resisting arrest is a lesser-included offense of the offense with which Campbell was charged.

To establish that a defendant was entitled to a charge on a lesser-included offense, the defendant must show that the offense for which a charge is requested (1) is a lesser-included offense and (2) there was evidence that, if guilty of an offense, he was guilty only of the lesser-included offense. *Cardenas v. State*, 30 S.W.3d 384, 392 (Tex.Crim.App.2000); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App. 1993). An offense is a lesser-included offense if it is established by proof of the same or less than all the facts *required* to establish the commission of the offense charged. TEX.CODE CRIM. PROC. ANN. art 37.09(1) (Vernon 1981) (emphasis added). "Facts required" means the evidence legally required to prove the elements of the charged offense. *Jacob v. State*, 892 S.W.2d 905, 908 (Tex.Crim.App.1995).

Campbell was charged with aggravated assault in that he intentionally or knowingly threatened Benjamin Rush, a police officer, with imminent bodily injury and used or exhibited a deadly weapon. Proof of resisting arrest requires proof that a person intentionally prevented or obstructed a person he knew to be a peace officer from effecting an arrest by using force against the officer. *See* TEX. PEN.CODE ANN. § 38.03(a) (Vernon 1994). If the person uses a deadly weapon, the offense is a third degree felony. *Id.* at (d).

In comparing the two offenses, the charge against Campbell, as charged in the indictment, does not *require* proof that he used force against Officer Rush. It only required proof that Campbell threatened Rush with imminent bodily injury. The use of force is not a fact that is the same or less than the required element of threat with imminent bodily injury. *See Miller v. State*, 86 S.W.3d 663, 665 (Tex.App.-Amarillo 2002, pet. ref'd). *See also Jacob v. State*, 892 S.W.2d 905 (Tex.Crim.App. 1995). Thus, resisting arrest is not a lesser-included offense of aggravated assault of a peace officer by the threat of imminent bodily injury. Campbell's first issue should be overruled, and his conviction should be affirmed.

Because the majority holds otherwise, I respectfully dissent.

Before Chief Justice GRAY, and Justice VANCE.[1]

## ORDER DENYING REHEARING

PER CURIAM.

A majority of the justices who participated in the decision in this case have not voted to grant the State's Motion for Rehearing, filed on February 20, 2003. Accordingly, the motion is denied. TEX. R.APP. P. 49.3.

BILL VANCE, Justice, concurring on denial of rehearing.

Willie Frank Campbell was indicted for using a handgun (a deadly weapon) to threaten Waco Police Officer Benjamin Rush with imminent bodily injury while Rush was attempting to arrest Campbell— a first degree felony. TEX. PEN.CODE ANN. § 22.02(a)(2), (b)(2) (Vernon Supp.2004). A jury convicted Campbell, and he was sentenced to thirty-three years in prison. He appealed, and in an opinion dated January 8, 2003, we overruled three of his four issues:

---

1. Former Chief Justice Davis, who was on the panel, resigned effective August 4, 2003.

1. That the evidence is legally insufficient to support the conviction.
2. That his due process rights were violated because section 22.02 and the indictment refer to assault on a "public servant," but the indictment, charge, and verdict form refer to assault on a "peace officer" and a "police officer," and therefore the jury did not find him guilty of the offense as alleged.
3. That the trial court's deadly weapon finding should be set aside because of the mistake complained about in issue two.

However, we sustained a fourth issue that the trial court erred by denying a jury-charge instruction on a lesser-included offense of resisting arrest using a deadly weapon, a third-degree felony. We reversed the judgment and remanded the cause.

The State filed a motion for rehearing regarding the jury-charge issue. Chief Justice Davis, who participated in this case, is no longer a member of the court, and he cannot participate in deciding the motion for rehearing. A majority of the remaining justices that decided the case have not voted to grant the motion. Accordingly, the motion will be denied. TEX. R.APP. P. 49.3. I write separately, however, to address the State's arguments about our original opinion on the jury-charge issue.

### Facts

Campbell was wanted on outstanding warrants. After he was spotted, on foot, by law enforcement officers, Officer Rush chased Campbell. Campbell had his hands in his pockets as though he was attempting to discard something; he dropped something on the ground which Rush did not retrieve. Rush said that when he caught Campbell, he told him "get on the ground," but Campbell did not comply. Rush grabbed Campbell around the upper body, described as a "bear hug," and tried to pull him down to hold him until other officers could arrive. He said Campbell tried to pull away, then "kind of hump[ed] over, hump[ed] his back over" and said "get back." Then, according to Rush, Campbell "kind of start[ed] straightening back up and [he had] a gun in his hand." Rush testified:

> He's got the gun in his hand and I've got him around his arm like this so he—I'm kind of—I'm squeezing him, I'm like, "I've got to get away from him now," because I can't defend myself because my arms are up around the top of him. So he's got the gun in his hand and he starts—he's trying to turn to his left. When he turned to the left I just let him keep coming and when he comes to the left, he's got the gun up like this.... I just keep coming with him and I just kind of just shove him into the wall.... I tried to get my distance from him....

Rush ran to get away from Campbell and did not turn around to look at him again. After they parted, Campbell threw the gun up on the roof of a building and ran in the other direction. He was later caught and subdued by three officers, including Rush. Rush testified that as the officers held him down, he continued to resist.

Campbell testified that when Rush "bearhugged" him from behind, he struggled with him, trying to get away. Campbell said he bent down, and Rush was on his back. He twisted from left to right, then "bent down again and then I came back up and that's when I turned to the left and he pushed me off." He said, "I had a gun in my hand and I was running down the breezeway and that's when I threw [the gun] on top of the roof." Campbell said he pulled out the gun only as he began to run, and his purpose was to

get rid of it. He denied ever saying "get back."

After Campbell was captured, the gun was retrieved from the roof. There was evidence it was not loaded.

The offense charged was necessarily based on Rush's initial struggle with Campbell, rather than the struggle that occurred when he was later captured. This is so because the indictment charged that he used the weapon and the undisputed evidence is that he had discarded the gun before the second struggle.

### The Test

The State's motion for rehearing argues that Campbell was not entitled to a lesser-included instruction, because resisting arrest using a deadly weapon is not a lesser-offense of aggravated assault using a deadly weapon.

The Court of Criminal Appeals has stated that the purpose of granting a lesser-included instruction is to prevent (a) an acquittal even though the jury believed the defendant to be guilty of the lesser-included offense, and (b) a "guilty" finding even though the jury did not believe the defendant committed the greater offense. *Bignall v. State*, 887 S.W.2d 21, 24 (Tex.Crim. App.1994). The policy of the Court is to liberally permit the instruction when warranted. *Id.*

Whether a lesser-included instruction should be given is determined on a case-by-case basis. *Bartholomew v. State*, 871 S.W.2d 210, 212–13 (Tex.Crim.App.1994). "Anything more than a scintilla of evidence

is sufficient to entitle a defendant to a lesser charge." *Bignall*, 887 S.W.2d at 23. The evidence may be proffered by the State or the defense; the evidence may be strong or weak, unimpeached or contradicted. *See Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App.), *cert. denied*, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); *Bell v. State*, 693 S.W.2d 434, 442 (Tex.Crim.App.1985). The trier of fact is always free to selectively believe all or part of the evidence admitted at trial. *See Bignall*, 887 S.W.2d at 24 (citing *Bell*, 693 S.W.2d at 443).

A two-step test, described by the Court as the "*Aguilar/Rousseau* test," is used to determine whether the defendant was entitled to have the jury instructed on a lesser-included offense. *Feldman v. State*, 71 S.W.3d 738, 750 (Tex.Crim.App.2002) (citing *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex.Crim.App.1985), and *Rousseau*, 855 S.W.2d at 672). The first step asks whether the offense is actually a lesser-included offense of the offense charged. *Id.* This inquiry is determined under article 37.09 of the Code of Criminal Procedure, which defines lesser-included offenses in four ways.[1] *Id.* (citing TEX.CODE CRIM. PROC. ANN. art. 37.09 (Vernon 1981)). The second step asks whether the record contains some evidence that would permit a rational jury to find that the defendant is guilty *only* of the lesser offense. *Id.* (citing *Rousseau*, 855 S.W.2d at 672). There must be some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of

---

**1.** An offense is a lesser-included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX.CODE CRIM. PROC. ANN. art. 37.09 (Vernon 1981).

the lesser-included offense. *Id.* The evidence must establish the lesser-included offense as a "valid rational alternative" to the charged offense. *Id.* at 751.

### Is it a Lesser–Included Offense?

Campbell asserted that, under subdivision (1) of article 37.09 and the facts of this case, the offense of resisting arrest using a deadly weapon is a lesser-included offense of the charged offense. TEX.CODE CRIM. PROC. ANN. art. 37.09(1) ("it is established by proof of the same or less than all the facts required to establish the commission of the offense charged"). In the typical situation under article 37.09(1), the greater offense has an "extra" element that the lesser offense does not. Examples are the various "aggravated" statutes which increase the degree of an offense by "adding" an element to the base offense. TEX. PEN.CODE ANN. §§ 20.04 (aggravated kidnapping), 22.02 (aggravated assault), 22.021 (aggravated sexual assault), 29.03 (aggravated robbery), 37.03 (aggravated perjury), 49.09 (felony DWI). But when, as here, the contention is made that the facts of the case raise the issue of a lesser-included offense, we must inquire whether the State, in presenting its case to prove the offense charged, presented facts that could constitute the lesser offense. *Bartholomew,* 871 S.W.2d at 212; *Broussard v. State,* 642 S.W.2d 171, 173 (Tex.Crim. App.1982).

> As the court reiterated in *Bartholomew:* Whether one offense bears such a relationship to the offense charged [so as to be considered a lesser included offense] is an issue which must await a case by case determination, both because the statute defines lesser included offenses in terms of the offense charged and because it defines lesser included offenses in terms of the facts of the case.

*Bartholomew,* 871 S.W.2d at 212 (citing *Day v. State,* 532 S.W.2d 302, 315–16 (Tex. Crim.App.1976) (opinion on reh'g)). Therefore, article 37.09(1) is applied to the evidence adduced at trial to determine whether Campbell was entitled to a charge on the lesser-included offense of resisting arrest. *See* TEX.CODE CRIM. PROC. ANN. art. 37.09(1). At the same time, we must consider the admonition of *Jacob v. State,* where the Court counseled examination of: (1) the elements of the offense as charged, (2) the statutory elements of the offense sought as a lesser-included offense, and (3) the evidence presented at trial to show the elements of the charged offense. *Jacob v. State,* 892 S.W.2d 905, 907–08 (Tex.Crim. App.1995). The inquiry focuses on the evidence offered at trial regarding the specific allegations in the indictment and excludes any evidence proving other matters not legally required to prove the allegations in the indictment. *Id.* at 908. Then, the court asks if that evidence alone also establishes the elements of the alleged lesser-included offense. *Id.* If other evidence is presented that is not legally required to prove the offense as charged, but which establishes the elements of another offense, article 37.09(1) does not apply. *Id.* at 908–09.

The elements of aggravated assault, as charged, are: Campbell (1) intentionally or knowingly,[2] (2) threatened Rush with imminent bodily injury, (3) using or exhibiting a deadly weapon during the commission of the assault, (4) knowing that Rush was a public servant, and (5) while Rush was lawfully discharging an official duty. TEX. PEN.CODE ANN. § 22.02(a)(2), (b)(2).

The elements of resisting arrest pertinent to this discussion are: Campbell (1) intentionally, (2) prevented or obstructed, (3) Rush, a person Campbell knew to be a

---

**2.** "Recklessly" was not charged in the indictment.

peace officer, (4) from effecting an arrest, search, or transportation of Campbell, (5) by using force against Rush, and (6) used a deadly weapon to resist the arrest or search. TEX. PEN.CODE ANN. § 38.03(a) (Vernon 2003).

It is not difficult to determine that (a) the evidence legally required to prove that Rush was a public servant lawfully discharging an official duty also shows that Rush was a peace officer attempting to effect an arrest and (b) evidence legally required to show that Campbell knew that Rush was a public servant proves that Campbell knew Rush was a police officer. The State does not contest that analysis.

The primary dispute of the parties centers on whether the evidence that is legally required to show that Campbell threatened Rush with imminent bodily injury also establishes that Campbell obstructed his arrest by using force against Rush. Rush testified that Campbell did not point the gun at him before he ran. Specifically, he said, "No, I had hold of him where he couldn't do that." Asked, "But you never saw the gun pointed at you, did you?" Rush replied, "No, I didn't stay there long enough." Campbell testified that he took the gun out only to "get rid of" it. Rush testified Campbell said, "get back." Campbell denied that he made the statement.

There is no direct evidence of a threat. Furthermore, a jury might have found that Campbell did not say "get back," did not point the gun at Rush, did not threaten him with it, and intended only to discard the unloaded gun. In that event, the jury would have found him not guilty of aggravated assault. But, because of the strug-

gle, a rational jury could have found Campbell guilty of resisting arrest. Thus, applying *Jacob*, the same or less than all the facts required to prove Campbell threatened Rush with imminent bodily harm also established a "use of force against" Rush by Campbell in resisting arrest. *See Sutton v. State*, 548 S.W.2d 697, 699 (Tex.Crim.App.1977) (when aggravated assault is committed by bodily injury, resisting arrest is a lesser-included offense because the "use of force" element of resisting arrest was proved by the same evidence as that which proved the infliction of bodily injury); *Bryant v. State*, 923 S.W.2d 199, 206 (Tex.App.-Waco 1996, pet. ref'd) (evidence of non-cooperation combined with violent swings of the body and a forward movement causing the officer and the defendant to fall off a porch was sufficient to establish resisting arrest).

The parties' secondary dispute is about the gun. The resisting arrest statute requires Campbell to have "used" the gun, whereas under the aggravated assault statute, Campbell could have either "used" or "exhibited" the gun. Thus, if the two terms mean something different and the evidence could prove only an "exhibition," then resisting arrest cannot be a lesser-included offense under these facts.

The meaning of the terms "use" and "exhibit" in relation to a deadly weapon has been discussed in the context of a deadly weapon finding under article 42.12, § 3g(a). TEX.CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (Vernon Supp.2004). In *Patterson v. State*, the Court of Criminal Appeals applied the Code Construction Act as required by the Penal Code.[3] *Patterson*

---

3. Section 1.05 of the Penal Code instructs us to: (1) construe the provisions of the code "according to the fair import of their terms, to promote justice and effect the objectives of the code"; and (2) apply, *inter alia*, sections

311.011 and 311.023 of the Code Construction Act. TEX. PEN.CODE. ANN. § 1.05 (referring to TEX. GOV'T CODE ANN. §§ 311.011, 311.023 (Vernon 1998)). Section 311.011(a) directs us to read words and phrases "in context and

*v. State,* 769 S.W.2d 938, 940 (Tex.Crim. App.1989); TEX. PEN.CODE ANN. § 1.05 (Vernon 2003). Generally, the Court said, in relation to a deadly weapon, the term "use" means to utilize, employ, or apply the deadly weapon to achieve an intended result. *Patterson,* 769 S.W.2d at 941. "Use" includes simple possession if the possession facilitates the commission of the associated felony. *Id.* To "exhibit" a deadly weapon means to consciously show, display, or present for viewing the deadly weapon during the commission of a crime. *Id.* "[O]ne can 'use' a deadly weapon without exhibiting it, but it is doubtful one can exhibit a deadly weapon during the commission of a felony without using it." *Id.* Applying these definitions in the present case, it is clear from the evidence that Campbell exhibited the gun because it was "consciously show[ed], display[ed], or present[ed] for viewing" during the commission of a crime. *Id.* And because "it is doubtful one can exhibit a deadly weapon during the commission of a felony without using it," the jury was not precluded from finding that Campbell "used" the gun. *Id.*

"Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge." *Bignall,* 887 S.W.2d at 23. Producing the gun could be viewed as facilitating Campbell's resisting arrest because it caused Rush to release Campbell, who then fled. The jury could have found that, by producing the gun, Campbell utilized, employed, or applied it to achieve an intended result. *Id.* Therefore, the same or less facts required to establish that Campbell used or exhibited the gun to threaten Rush also established that Campbell used the gun to resist arrest.

Resisting arrest is, under the specific facts of this case, a lesser-included offense of aggravated assault. *See* TEX.CODE CRIM. PROC. ANN. art. 37.09(1). Thus, the first step of the "*Aguilar/Rousseau* test" is satisfied. *Feldman,* 71 S.W.3d at 750.

### Was it a Valid Rationale Alternative?

The second step of the test is whether resisting arrest was a "valid rational alternative" to a conviction for aggravated assault? There is no direct evidence that Campbell threatened Rush. Campbell and Rush testified differently about whether Campbell said, "get back." There is no evidence that Campbell pointed the gun at Rush; Campbell testified that his intent was only to "get rid of" the gun. In the absence of evidence that Campbell pointed the gun at Rush, the jury could have believed that he did not intend to threaten Rush with it. Furthermore, that Campbell struggled with Rush in an effort to avoid being arrested is uncontroverted. When Campbell displayed the gun, Rush released him and he ran. Thus, the circumstantial evidence the State presented to prove that Campbell threatened Rush with imminent bodily injury was open to a different interpretation by the jury, *i.e.,* that Campbell intended only to resist arrest. *See Saunders v. State,* 840 S.W.2d 390, 392 (Tex.Crim.App.1992).

This case is distinguishable from *Lofton v. State,* where the Court of Criminal Appeals found resisting arrest not to be a rational alternative to assault on a public servant. *Lofton v. State,* 45 S.W.3d 649, 651 (Tex.Crim.App.2001). There, the defendant slapped the officer's hands away, struck him twice in the face, picked him up and threw him down on a table—breaking

---

construe[ ] [them] according to the rules of grammar and common usage." Section 311.023(1),(4),(5) enables us to consider, when construing a statute, the "object sought to be attained" by the enactment of the stat-

ute, the "common law or former statutory provisions, including laws on the same or similar subjects," and the "consequences of a particular construction."

it, and jumped on top of him. *Id.* at 650. The defendant testified that he did not assault the officer, nor did he resist arrest. *Id.* at 651. As the court noted, "Even if [the defendant] had intended only to prevent his arrest, the force used by [the defendant] against [the officer], at the very least, recklessly caused [the officer] to suffer a bodily injury. *Id.*

A rational jury could have found that Campbell resisted arrest rather than that he assaulted Rush. *See Feldman,* 71 S.W.3d at 750.

### Harm Analysis

Having found that the trial court erred in not giving the instruction, a harm analysis is required. When a complaint about an error in the charge is properly preserved—as here by requesting the instruction—reversal is required if the error caused "some" harm to the accused. Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 1981); *Ovalle v. State,* 13 S.W.3d 774, 786 (Tex.Crim.App.2000) (quoting *Almanza,* 686 S.W.2d at 171). "[I]n the context of *Almanza,* supra, and Article 36.19, supra, the presence of *any* harm, regardless of degree, which results from preserved charging error, is sufficient to require a reversal of the conviction. Cases involving preserved charging error will be affirmed only if *no* harm has occurred." *Arline v. State,* 721 S.W.2d 348, 351 (Tex.Crim.App. 1986).

The Court of Criminal Appeals has held that failure to give a lesser-included instruction is "some" harm because the jury is not given the option to convict on the lesser-included offense. *E.g., Saunders v. State,* 913 S.W.2d 564, 571 (Tex.Crim.App. 1995) (citing *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980)) (danger is that the jury will convict of some offense, *i.e.,* the greater offense, only because of no alternative); *Ross v. State,* 861 S.W.2d 870, 877 (Tex.Crim.App.1992);

*Mitchell v. State,* 807 S.W.2d 740, 742 (Tex.Crim.App.1991); *also Jiminez v. State,* 953 S.W.2d 293, 299–300 (Tex.App.-Austin 1997, pet. ref'd).

If the absence of the lesser-included offense instruction left the jury with the sole option either to convict the defendant of the charged offense or to acquit him, a finding of harm is essentially automatic because the jury was denied the opportunity to convict the defendant of the lesser offense. *Saunders,* 913 S.W.2d at 571. In cases such as this, there is a distinct possibility that the jury, believing the defendant to have committed some crime, but given only the option to convict him of the greater offense, may have chosen to find him guilty of that greater offense rather than to acquit him altogether, even though it had a reasonable doubt that he really committed the greater offense. *Id.* (citing *Beck,* 447 U.S. at 634, 100 S.Ct. at 2388).

The jury had two options in this case: find appellant guilty of aggravated assault or acquit him. It chose to convict him and assessed punishment at 33 years' imprisonment. The range of punishment for aggravated assault is confinement for 5 to 99 years or life. Tex. Pen.Code Ann. § 12.32 (Vernon 2003). At trial, Campbell requested a charge on the lesser-included offense of resisting arrest, with a range of punishment of 2 to 10 years confinement. *Id.* § 12.34 (Vernon 2003). Appellant was harmed because the jury was not given the opportunity to find him guilty of the lesser-included offense of resisting arrest, which was a valid rational alternative based on the evidence.

### Conclusion

Because the instruction should have been given, and because there was harm, the conclusions in the opinion are correct. Accordingly, I concur in the denial of the State's motion for rehearing.

TOM GRAY, Chief Justice, dissenting to denial of motion for rehearing.

## FAILURE TO REQUEST A RESPONSE

I have long been opposed to any effort to re-write, modify, or respond to arguments made in a motion for rehearing without requesting a response, even if we are reaching the same result. *See T.C. & C. Real Estate Holding, Inc. v. Sherrod,* No. 10–00–002–CV (Tex.App.-Waco November 14, 2001)(Gray, J., dissenting)(not designated for publication); *In the Interest of J.F.C.,* 57 S.W.3d 66, 76 (Tex.App.-Waco 2001)(Gray, J., dissenting), *rev'd,* 96 S.W.3d 256 (Tex.2002). Thus, before my colleague offers an opinion on the issues raised in the State's motion for rehearing, I would have requested a response to help us focus the issues. Of course, I would also request the response because I continue to believe we erred in the original analysis and because a response is necessary before we can grant a motion for rehearing. *See* TEX.R.APP. P. 49.2.

## DIRECT EVIDENCE OF THREAT

The concurring opinion twice states there is no direct evidence of a threat. This is critical to the determination made therein that resisting arrest is a rational alternative to aggravated assault. I believe the assertion that "there is no direct evidence of a threat" ignores the evidence in the case and is against common sense.

Picture the facts: A uniformed police officer is in a foot chase in pursuit of a suspect he has identified as wanted on outstanding warrants. The officer overtakes and bear-hugs the suspect in an effort to subdue him. Suddenly, a gun appears in the suspect's hand. No rational person would conclude from these facts that this alone is not a threat directed to the police officer.

To be a threat, the gun does not have to be pointed at the officer. To be a threat, no words need be spoken. To be a threat, we do not need to know what action the officer takes. In summary: pursuit + gun = threat.

Add to these facts, the testimony that at the time the gun appeared in the suspect's hand, he said "get back." Not only is this additional direct evidence of a threat, but it is also evidence of a direct threat. While the evidence of the direct threat was *disputed* because Campbell testified he never made the statement, there is a substantial difference between disputed evidence of a direct threat and no evidence of a threat. My esteemed colleague has failed to recognize this distinction in the concurring opinion.

## NEED FOR CLARIFICATION

If time permitted, I would have used this case for a comprehensive review and analysis of the cases involving lesser included instructions. In Texas, this line of cases goes back to at least 1952 (*Daywood v. State,* 248 S.W.2d 479, 157 Tex.Crim. 266 (Tex.Crim.App.1952)), but really proliferated after approximately 1975. *See Day v. State,* 532 S.W.2d 302 (Tex.Crim.App. 1975).

Since then, there have been many cases in this area that contribute to the growing body of case law.[1] The holding and result

---

1. Just a few of the cases in this area are: *Hampton v. State,* 109 S.W.3d 437 (Tex.Crim. App.2003); *Feldman v.State,* 71 S.W.3d 738 (Tex.Crim.App.2002); *Lofton v. State,* 45 S.W.3d 649 (Tex.Crim.App.2001); *Wesbrook v. State,* 29 S.W.3d 103 (Tex.Crim.App.2000); *Forest v. State,* 989 S.W.2d 365 (Tex.Crim. App.1999); *Moore v. State,* 969 S.W.2d 4 (Tex. Crim.App.1998); *Arevalo v. State,* 943 S.W.2d 887 (Tex.Crim.App.1997); *Schweinle v. State,* 915 S.W.2d 17 (Tex.Crim.App.1996); *Jacob v. State,* 892 S.W.2d 905 (Tex.Crim.App.1995);

in many of these cases are difficult to reconcile. I feel the time is ripe to prepare a comprehensive review of the cases and align their holdings, if they can be, and explain away and forever discard those that can be fairly characterized as aberrations to an overall comprehensive analysis of this area of law.

But time does not permit me this luxury, so I must leave that task for another court on another day. Until then, substantial judicial resources will continue to be consumed making these detailed, fact specific reviews.

This could, however, be largely avoided if practitioners would simply trust juries to follow their oath that a conviction of the offense requires the State to prove its case beyond a reasonable doubt on the charged offense. But then it is the courts that created this rule requiring the submission of the lesser included offense because we were fearful that juries would not follow their oath—and that always leads to trouble. We brought it upon ourselves.

#### CONCLUSION

I would request a response to the State's motion for rehearing with an eye toward granting it.

*Bignall v. State,* 887 S.W.2d 21 (Tex.Crim. App.1994); *Bartholomew v. State,* 871 S.W.2d 210 (Tex.Crim.App.1994); *Rousseau v. State,* 855 S.W.2d 666 (Tex.Crim.App.1993); *Saunders v. State,* 840 S.W.2d 390 (Tex.Crim.App. 1992); *Aguilar v. State,* 682 S.W.2d 556 (Tex. Crim.App.1985); *Lugo v. State,* 667 S.W.2d 144 (Tex.Crim.App.1984; *Broussard v. State,* 642 S.W.2d 171 (Tex.Crim.App.1982); and *Royster v. State,* 622 S.W.2d 442 (Tex.Crim. App.1981).