

## NUMBER 13-10-00419-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**ARVELL JAMES RABE,**          **Appellant,**

**v.**

**THE STATE OF TEXAS,**          **Appellee.**

**On appeal from the County Court
of Robertson County, Texas.[1]**

## MEMORANDUM OPINION

**Before Justices Benavides, Vela, and Perkes
Memorandum Opinion by Justice Benavides**

Appellant, Arvell James Rabe, was convicted of resisting arrest, a Class A

misdemeanor. *See* TEX. PEN. CODE ANN. § 38.03 (West 2011). He was sentenced to

---

[1] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

ninety (90) days in jail and assessed a $2,000 fine, in addition to court costs. By two issues, Rabe contends that: (1) the evidence to sustain his conviction was legally insufficient and that (2) the trial court's failure to define the term "force" or the phrase "using force against the peace officer" egregiously harmed him. Because we hold that there was sufficient evidence to uphold the resisting arrest charge and there was no jury charge error, we affirm the judgment.

## I. BACKGROUND

This case involves a charge for resisting arrest. On the evening of December 18, 2008, Chris Sanders, a police officer with the City of Franklin, received a message from the Robertson County Sheriff's Office dispatch that there was a warrant for Rabe's arrest. While on his night shift that evening, Officer Sanders observed Rabe traveling northbound on Highway 79. Officer Sanders knew Rabe because they had grown up together in the City of Franklin. Officer Sanders initiated a traffic stop to pull Rabe over. Rabe pulled his pickup over to the side of the road and, according to Officer Sanders, walked "in an agitated manner…towards the rear of his vehicle" to the patrol car. Officer Sanders informed Rabe that there was a warrant for his arrest. After giving Rabe's driver's license number to the county dispatch to confirm the warrant, Officer Sanders learned that there was not only an active warrant in Robertson County, but also one in Leon County.

Officer Sanders next told Rabe that Rabe would be placed under arrest for the warrants. Rabe replied that he was not going to jail and would not leave his vehicle on the side of the road. Officer Sanders informed Rabe that he could contact someone to pick up his vehicle so that it would not be towed. Rabe ignored Officer Sanders and

2

attempted to return to his vehicle. Officer Sanders ordered him to stop. Rabe continued, however, so Officer Sanders reached up and grabbed Rabe by his left arm to stop him. According to Officer Sanders, Rabe then "forcefully jerked his arm away." Rabe got into his vehicle, put it into drive, and attempted to drive away. Officer Sanders then testified that the following occurred:

A. My—my left arm is—I've got a hold of his left arm with my right—with my left arm and trying to pull him back out of the vehicle. Once he got the ignition started and got it into gear, I was reaching over the top of the steering wheel, trying to pull the vehicle back up into park.

Q. What happened?

A. Every time I would manage to get the vehicle pulled back up into park, Mr. Rabe would pull it back down into gear and was driving. Every time he would get it into gear, he punched the gas and started going down the road.

According to Officer Sanders, this cycle occurred approximately four to six times until he was able to put the vehicle in park and remove Rabe's keys from the ignition. At this point, Texas Department of Public Safety Trooper Mike Smith arrived as back-up assistance. After "struggling with Rabe" by pulling him out of the vehicle by his left arm, both Officer Sanders and Trooper Smith took Rabe into custody. Rabe continued to protest by locking his arms so that the law enforcement officers could not place him in handcuffs. At the police station, Officer Sanders noted that Rabe had a spot of blood "on his forehead and some dried blood down the side of his face." Rabe noted that it came from an old injury and refused medical treatment. Officer Sanders himself sustained a bruise and a rash to his right arm, forearm, and hand caused during his scuffle with Rabe.

3

A jury convicted Rabe of resisting arrest, a Class A misdemeanor, and sentenced him to ninety days in jail along with a $2,000 fine and court costs. This appeal ensued.[2]

## II. SUFFICIENCY OF THE EVIDENCE

### A. Applicable Law

The *Jackson v. Virginia* legal-sufficiency standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We thus apply the *Jackson* standard to our review and inquire whether "considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt" in this case. *Brooks*, 323 S.W.3d at 899. In our analysis, we are required to "defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight given to their testimony." *Id.*

"[S]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the

---

[2] We note that appellee, the State of Texas, did not file an appellee's brief. Under the Texas Rules of Appellate Procedure, "there is no corresponding rule requiring the State to file a brief in response to appellant's brief." *Siverand v. State*, 89 S.W.3d 216, 219 (Tex. App.—Corpus Christi 2002, no pet.). The appellate court must still make an independent examination of the merits of the claim, though. *Id.* at 220. "This examination must necessarily be limited to the arguments advanced in the trial court, otherwise, we run afoul of the prohibition of advancing argument on behalf of the parties." *Id.*

4

defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc); *Trevino v. State*, 228 S.W.3d 729, 736 (Tex. App.—Corpus Christi 2006, pet. ref'd). Here, Rabe commits the offense of resisting arrest if he: (1) intentionally prevents or obstructs a person he knows is a peace officer, (2) from effecting an arrest, (3) by using force against the peace officer or another. TEX. PENAL CODE ANN. § 38.03.

## B. Discussion

Rabe cites several cases for the proposition that non-cooperation with an arrest does not constitute an act of force against a peace officer. *See Sheehan v. State*, 201 S.W.3d 820, 823 (Tex. App.—Waco 2006, no pet.) ("non-cooperation with an arrest is not by itself an act of the 'use of force against a peace officer under the statute."); *Campbell v. State*, 128 S.W.3d 662, 671 (Tex. App.—Waco 2003, no pet.) ("refusing to cooperate with being arrested does not constitute resisting arrest by force"); *see also Young v. State*, 622 S.W.2d 99, 100–01 (Tex. Crim. App. 1981) ("pulling away from an arresting officer after being arrested" does not constitute resisting arrest.).

Here, however, Rabe's actions constituted more than mere "non-cooperation." The evidence shows that he "forcefully jerked" Officer Sanders's arm away when the officer first tried to arrest him after confirming the two outstanding warrants against Rabe. Rabe then intentionally ignored Officer Sanders's orders not to return to his vehicle. Rabe also repeatedly put his vehicle into drive when Officer Sanders was clearly trying to stop the moving vehicle—a highly dangerous scenario. Rabe then tussled with both Officer Sanders and Trooper Smith when they were attempting to handcuff him. Finally, there was evidence that both Rabe and Officer Sanders sustained injuries after their altercation, as Rabe had blood on his forehead and the side of his face while Officer

5

Sanders had a "rash" on his left arm from trying to reach in through the driver's side window to shift Rabe's pickup into park. Viewing the light most favorable to the verdict, we hold that there was sufficient evidence that Rabe used force against Officer Sanders to avoid his arrest. *See Brooks*, 323 S.W.3d at 899. We overrule Rabe's first issue.

### III. JURY CHARGE ISSUE

#### A. Applicable Law

By his second issue, Rabe argues he was egregiously harmed by the trial court's failure to define the term "force" or the phrase "using force against the peace officer." Our first duty in analyzing a jury-charge issue is to determine whether error exists. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc). If we find error, we analyze it for harm. *Id.; Almanza v. State*, 724 S.W.2d 805, 806 (Tex. Crim. App. 1986). The degree of harm necessary for reversal depends on whether the error was preserved by objection. *Almanza*, 724 S.W.2d at 806. If the error was preserved by objection, we will reverse if we find "some harm" to the defendant's rights. *Id.* If no objection was made, we will reverse only if the record shows "egregious harm" to the defendant. *Id.* Egregious harm is harm that is fundamental such that a defendant "has not had a fair and impartial trial." *Id.*

#### B. Discussion

It is undisputed that Rabe's counsel did not object to the definitions, or lack thereof, of the terms "force" and "using force against peace officer" in the jury charge. Therefore, under *Almanza*, Rabe must show that the trial court erred in failing to offer these definitions and that such a failure caused him egregious harm. *Id.* When a statutory definition is not included in the jury charge, "it is assumed the jury would

6

consider the commonly understood meaning in its deliberations." *Olveda v. State*, 650 S.W.2d 408, 409 (Tex. Crim. App. 1983); *see also Nejnaoui v. State*, 44 S.W.3d 111, 120 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (concluding that the definition of "conduct" is neither complex nor unusual and that failing to define "conduct" in the jury charge could not have confused the jury.).

Here, Rabe argues that there is no "commonly understood meaning" of the terms "force" or "using force against." We disagree. The word "force" is not ambiguous; neither is the term "using force." *Cf. Lindsay v. State*, 102 S.W.3d 223, 231 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (concluding that the phrase "criminally responsible" is, in fact, ambiguous). Webster's Dictionary defines "force" as "violence, compulsion, or constraint exerted upon or against a person or thing." MERRIAM WEBSTER'S DICTIONARY 455 (10th ed. 1993). In light of the evidence in this case, which revealed that Rabe "forcefully jerked" Officer Sanders's arm away during his arrest, that he used a moving vehicle to thwart the officer's attempt to place him into custody, that he resisted when two law enforcement officers attempted to handcuff him, and that he and Officer Sanders suffered minor injuries after the arrest altercation, we conclude that the jury correctly used and applied the "commonly understood meaning" of the terms "force" and "using force." Rabe committed several acts of "force" against Officer Sanders to evade arrest which rose above the level of mere non-cooperation.

We hold that Rabe did not suffer any egregious harm when the trial court failed to define "force" or "using force" in the jury charge, because it had a commonly understood meaning. *See Almanza*, 724 S.W.2d at 806. Accordingly, we overrule Rabe's second issue.

7

## IV. CONCLUSION

Having overruled both of Rabe's issues, we sustain the judgment of the trial court.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
7th day of June, 2012.