Affirmed and Memorandum Opinion
filed July 20, 2010.

In
The

Fourteenth
Court of Appeals



NO. 14-09-00322-CR



Demetrius Carr, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 54th District Court

McLennan County, Texas

Trial Court
Cause No. 2007-348-C2



 

M E M O R A N D U M    O P I N I O N


Appellant, Demetrius Carr, was convicted of (1)
aggravated assault on a public servant, (2) unlawful possession of a firearm,
and (3) possession of cocaine with the intent to deliver.  Appellant received a
life sentence in prison for the aggravated assault on a public servant conviction
and a separate life sentence for the possession with the intent to deliver
conviction.  He was also sentenced to ten years in prison for the unlawful
possession of a firearm conviction.  In seven issues, appellant challenges the
legal and factual sufficiency of the evidence and contends that the jury charge
was erroneous.  We affirm. 

I.  BACKGROUND

On January 28, 2007, appellant’s rented vehicle
collided with a roadside tree.  Officer James Eslick of the Bellmead Police
Department was the first officer to respond to the dispatch call, arriving
minutes after the collision.  Officer Eslick, who was in full uniform, arrived
in a marked unit.  Upon arriving, he observed the vehicle partially in an
off-road ditch; damage to the vehicle was primarily on the passenger’s side.  As
Officer Eslick approached, a bystander advised Officer Eslick that a handgun was
in the vehicle.  When Officer Eslick cautiously looked into the vehicle to
locate and secure the handgun, he observed appellant sitting in the driver’s
seat.  Officer Eslick identified himself as a police officer for the Bellmead
Police Department.  As appellant remained silent, Officer Eslick observed the
handgun in appellant’s waistband.  Officer Eslick instructed appellant to stay
still and informed him that emergency medical technicians were on their way to
the scene.  Appellant did not respond.  Officer Eslick then attempted to
retrieve the handgun from appellant’s waistband.  Appellant immediately grabbed
the handgun and pointed it directly at Officer Eslick.  

Fearing that appellant would shoot him, Officer
Eslick grabbed the gun with both hands to secure it.  Appellant’s hold on the
handgun was too strong for the officer to seize it.  As the men began to
struggle for possession of the gun, the handgun muzzle was approximately one
foot away from Officer Eslick.  Officer Eslick instructed appellant many times
to release the gun, but he refused.  Officer Eslick eventually was able to break
appellant’s tight grip and gain full possession of the handgun.  As Officer
Eslick secured the weapon, two backup units arrived:  Officer Timothy
Westmoreland of the Bellmead Police Department and Officers David Westmoreland and
Matt Overcash of the Lacy-Lakeview Police Department.  Officer Eslick
instructed one of the back-up officers to secure and detain appellant.  Officer
Eslick then briefly stepped away to catch his breath and regain his composure. 


The emergency medical technicians arrived and began
to assess any injuries appellant had sustained from the automobile accident.  Officer
David Westmoreland looked in the vehicle and observed a marijuana cigarette on
the floorboard.  Appearing to be nervous, appellant stated repeatedly that
there were too many officers around and that he needed to leave.  As the
medical team completed its observations, appellant attempted to flee on foot. 
The backup officers caught up to appellant, but they could not completely
restrain him.  A brief physical altercation ensued as appellant resisted
detention.  Officer Eslick, still regaining his composure, noticed that the
backup officers could not restrain appellant and ran to their aid.  Officer
Eslick deployed his taser on appellant, after which the officers were able to
handcuff him and secure him in the police unit.  Appellant continued to resist
arrest as the officers placed him in the unit.  The officers later conducted an
inventory search of the vehicle and discovered cocaine.    

Appellant was transported to jail and charged by
indictment with aggravated assault on a public servant, unlawful possession of
a firearm, and possession of cocaine with the intent to deliver.  The indictment
also alleged that appellant had previously been convicted of unlawful
possession of a firearm by a felon.  Appellant pleaded not guilty to all three counts,
true to the prior conviction allegation, and tried his case to a jury.  At
trial, Officers Eslick, David Westmoreland, and Timothy Westmoreland testified
about the events surrounding the assault, appellant’s attempts to flee and
resist arrest, and seizure of the cocaine.  A forensic scientist for the Waco
Police Department testified that the amount of cocaine seized and the manner in
which it was packaged were consistent with distribution.   The jury ultimately
convicted appellant on all three counts.  Appellant appeals two of his convictions: 
aggravated assault on a public servant and possession of cocaine with the
intent to deliver. 

Appellant raises seven points on appeal.  In his
first and second issues, he contends that the evidence is legally and factually
insufficient on the element of Officer Eslick’s status as a public servant.  Appellant’s
third issue challenges the factual sufficiency of the evidence on whether appellant
(1) knew Officer Eslick was a public servant and (2) intended to threaten
Officer Eslick with imminent bodily injury.  In his fourth issue, appellant
contends that the jury instruction on the aggravated assault on a public
servant count failed to link the appropriate mens rea to each conduct
element of the offense.  In appellant’s fifth issue, he contends that the jury charge
contained an improper comment on the weight of the evidence.  In his sixth
issue, appellant contends that the trial court erroneously failed to provide
the jury with a section 2.05 presumption instruction after giving an
instruction on a presumed fact.  In appellant’s seventh issue, he contends that
the jury instruction on the possession of cocaine with the intent to deliver
count failed to link the appropriate mens rea to each conduct element of
the offense.  

II.  SUFFICIENCY

            In
appellant’s first three issues, he challenges the legal and factual sufficiency
of the evidence to support his conviction for aggravated assault on a public
servant.   In a legal sufficiency review, we view all the evidence in the light
most favorable to the verdict and determine whether a rational jury could have
found the defendant guilty of all the elements of the offense beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Williams
v. State, 270 S.W.3d 140, 142 (Tex. Crim. App. 2008).  The jury is the
exclusive judge of the credibility of witnesses and of the weight to be given
to their testimony.  Lancon v. State, 253 S.W.3d 699, 707 (Tex. Crim.
App. 2008).  Reconciliation of conflicts in the evidence is within the
exclusive province of the jury.  Wyatt v. State, 23 S.W.3d 18, 30 (Tex.
Crim. App. 2000) (quoting Losada v. State, 721 S.W.2d 305, 309 (Tex.
Crim. App. 1986)).   We must resolve any inconsistencies in the testimony in
favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim.
App. 2000).

            In
a factual sufficiency review, we review all the evidence in a neutral light,
favoring neither party.  Watson v. State, 204 S.W.3d 404, 414 (Tex.
Crim. App. 2006).  We then ask (1) whether the evidence supporting the
conviction, although legally sufficient, is nevertheless so weak that the
jury’s verdict seems clearly wrong and manifestly unjust, or (2) whether,
considering the conflicting evidence, the jury’s verdict is against the great
weight and preponderance of the evidence.  Marshall v. State, 210 S.W.3d
618, 625 (Tex. Crim. App. 2006); Watson, 204 S.W.3d at 414–17.  We
cannot declare that a conflict in the evidence justifies a new trial simply
because we disagree with the jury’s resolution of that conflict.  Watson,
204 S.W.3d at 417.  If an appellate court determines that the evidence is
factually insufficient, it must explain in exactly what way it perceives the
conflicting evidence greatly to preponderate against conviction.  Id. at
414–17.  The reviewing court’s evaluation should not intrude upon the fact-finder’s
role as the sole judge of the weight and credibility given to any witness’s
testimony.  Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

A.  Issues 1 and 2: Legal and
Factual Sufficiency 

of the Evidence on Officer Eslick’s Status as a
Public Servant 

In appellant’s first two issues, he claims that the
evidence is legally and factually insufficient to prove that Officer Eslick was
a public servant.  Specifically, appellant contends that although the State established
Officer Eslick’s status as a police officer for the City of Bellmead, the State
failed to prove that a police officer is a public servant under section 22.02
of the Texas Penal Code.  Section 22.02 provides that an individual commits
aggravated assault if he commits assault as defined under section 22.01—a
threat of imminent bodily injury—and “uses or exhibits a deadly weapon during
the commission of the assault.”  Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2)
(Vernon Supp. 2009).  Aggravated assault, normally a second-degree felony, may
be elevated to a first-degree felony if the individual commits the aggravated
assault “against a person [he] knows is a public servant while the public
servant is lawfully discharging an official duty, or in retaliation or on
account” of a public servant’s “exercise of official power or performance
of an official duty.”  Id. § 22.02(b)(2)(B) (emphasis added).[1]  

While the Penal Code uses the term “public servant,”
many courts have held that the term “public servant” necessarily contemplates a
police officer.  Campbell v. State, 128 S.W.3d 662, 668 (Tex. App.—Waco
2003, no pet.) (recognizing that “a ‘public servant’ is a broad term including
‘peace officers’ and ‘police officers’”); Carriere v. State, 84 S.W.3d
753, 757 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d) (holding that a
police officer is a public servant within the meaning of the criminal
retaliation statute); Hoitt v. State, 28 S.W.3d 162, 165 (Tex.
App.—Texarkana 2000) (“A municipal police officer is a public servant within
the meaning of the Penal Code.”), pet. dism’d, improvidently granted, 65
S.W.3d 59 (Tex. Crim. App. 2001) (per curiam); McCoy v. State, 932
S.W.2d 720, 723 (Tex. App.—Fort Worth 1996,writ ref’d) (holding that a municipal
police officer is a public servant for purposes of the statute criminalizing
aggravated assault and retaliation against a public servant); In re T.F.,
No. 11-06-00179-CV, 2008 WL 187925, at *1 (Tex. App.—Eastland Jan. 17, 2008, no
pet.) (mem. op.) (“Public servants include officers, employees, or agents of
government.”); Rexroad v. State, No. 05-01-01886-CR, 2003 WL 402871, at
*2 (Tex. App.—Dallas Feb. 24, 2003, no pet.) (“Peace officers and elected
governmental officials are considered public servants.”).  

At trial, Officer Eslick testified that he was a
police officer for the City of Bellmead when appellant committed the aggravated
assault.  Appellant never disputed this testimony either below or on appeal.  Because
there is undisputed evidence that Officer Eslick was a police officer for the
City of Bellmead when the aggravated assault was committed, we find that the
evidence is legally and factually sufficient to establish Officer Eslick was a
public servant under section 22.02.  We overrule appellant’s first and second
issues.

B.  Issue 3: Factual
Sufficiency of the Evidence as to

Whether Appellant Knew Officer
Eslick Was a Police Officer and Whether 

Appellant Intended to Threaten Officer Eslick
with Imminent Bodily Injury

In appellant’s third issue, he claims that the
evidence is factually insufficient to establish: (1) his knowledge of Officer
Eslick’s status as a police officer and (2) his intent to place Officer Eslick
in fear of imminent bodily harm.  We first correct appellant’s interpretation
of the offense elements.  The Penal Code provides that a person commits
aggravated assault with a deadly weapon when: (1) he intentionally or
knowingly threatens imminent bodily injury; (2) to a person whom he
knew was a public servant; (3) while the public servant was lawfully
discharging an official duty; and (4) used a deadly weapon during the course of
committing the assault.  See Tex. Penal Code Ann. §§ 22.01(a)(2),
22.02(a)(2), (b)(2)(B).  Contrary to appellant’s argument, the State was not
required to prove that he intended to place Officer Eslick in fear of imminent
bodily harm.  Rather, the statute provides that the State had to prove
appellant’s intent to threaten Officer Eslick with imminent bodily harm.   Applying
the proper requirements of the statute, we now address appellant’s sufficiency
arguments.

1.  Aware That Officer Eslick Was a Police Officer

At trial, Officer Eslick testified that he was
dressed in full police uniform at the time of the incident.  Officer Eslick
testified that he identified himself to appellant as a police officer with the
Bellmead Police Department.  Section 22.02(c) creates a presumption that an
accused knew that “the person assaulted was a public servant . . . if the
person was wearing a distinctive uniform or badge indicating the person’s
employment as a public servant.”  Tex. Penal Code Ann. § 22.02(c).  The
evidence is factually sufficient to establish the statutory presumption that appellant
knew Officer Eslick was a public servant.  

Appellant attempts to dispute Officer Eslick’s
testimony with other evidence indicating appellant appeared dazed when the
officer approached his vehicle.  Appellant’s argument is unpersuasive. 
Although Officer Eslick testified that appellant initially appeared confused
and Officer Westmoreland testified that appellant was “probably dazed and
confused from the impact,” Officer Eslick testified that appellant appeared to
be aware of his actions during the aggravated assault and the struggle over the
gun.  The other officers also testified that immediately after the assault,
appellant seemed anxious, constantly stating that there were “too many laws
around,” and “he needed to get out of there.”    

When faced with contradictory testimony, we must give
great deference to the jury’s resolution of those conflicts.  As the exclusive
judge of the facts and credibility of the witnesses, the jury was free to
believe or disbelieve all or any part of a witness’s testimony.  See Penagraph
v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981).  The jury weighed the
evidence, resolving conflicts in the testimony, and chose to believe Officer
Eslick’s testimony that he was in full police uniform, he identified himself as
an officer, and appellant was aware of his actions during the assault and struggle
over the gun.  We conclude that the evidence is factually sufficient to
establish that appellant knew Officer Eslick was a public servant.  

2.  Intentional or Knowing Threat of Imminent Bodily Injury

A person acts intentionally “when it is his conscious
objective or desire to engage in the conduct or cause the result.”  Tex. Penal
Code Ann. § 6.03(a).  A person acts knowingly, with respect to the nature of
his conduct or the circumstances surrounding his conduct, “when he is aware of
the nature of his conduct or that the circumstances exist.”  Id. §
6.03(b).  

Here, the evidence shows that Officer Eslick observed
appellant in possession of a firearm when he approached the vehicle.  After Officer
Eslick identified himself as an officer, he attempted to secure the handgun.  Appellant
then grabbed the gun and pointed it in Officer Eslick’s direction, specifically
at his head and chest.  Officer Eslick feared for his life and attempted to
force the gun from appellant’s grip.  Appellant’s hold, however, was too
strong.  Officer Eslick used both of his hands to secure the handgun from
appellant.  Appellant still refused to release the gun and used both of his
hands to take control of the gun.  Struggling with appellant over the gun for
approximately one minute, Officer Eslick remained in fear of his life.   Officer
Eslick testified that appellant appeared to be well aware of his actions during
the struggle.  Eventually, Officer Eslick was able to secure the handgun.

The evidence that appellant was dazed and confused
from the impact of the accident does not render the evidence factually
insufficient as to appellant’s intent.  Based on Officer Eslick’s testimony of
appellant’s awareness and alertness, a jury could have reasonably inferred from
the evidence that appellant had the requisite intent to commit the charged
offense.  After a neutral review of the evidence, both for and against the
findings, we conclude that the proof of appellant’s guilt on the aggravated
assault count is not so obviously weak as to undermine our confidence in the
jury’s determination nor is it greatly outweighed by contrary proof.  See
Johnson, 23 S.W.3d at 11.   Accordingly, we overrule appellant’s third
issue.

III.  CHARGE ERROR

In appellant’s fourth, fifth, sixth, and seventh issues,
he contends that there was error in the jury charge on the aggravated assault on
a public servant and possession with intent to deliver counts.  With respect to
the jury instruction on the aggravated assault count, appellant contends that
the charge: (1) failed to link the appropriate mens rea to each conduct element
of the offense; (2) made an improper comment on the weight of the evidence; and
(3) omitted a section 2.05 presumption instruction.  Regarding the jury
instruction on the possession with the intent to deliver count, appellant
contends that the charge failed to link the appropriate mens rea to each
conduct element of the offense.

The standard of review for charge error is dependent
on whether the defendant properly objected to the alleged error.  Ngo v.
State, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005).  When, as here, an
appellant fails to object to the charge at trial, he must show egregious harm
to prevail on appeal.  Id.  Errors resulting in egregious harm are those
that affect the very basis of the case, deprive the defendant of a valuable
right, or vitally affect a defensive theory.  Warner v. State, 245
S.W.3d 458, 461–62 (Tex. Crim. App. 2008) (quoting Hutch v. State, 922
S.W.2d 166, 171 (Tex. Crim. App. 1996)).  To determine whether error was so
egregious that a defendant was denied a fair and impartial trial, we examine:
(1) the entire jury charge; (2) the state of the evidence; (3) the arguments of
counsel; and (4) any other relevant information in the record.  Ngo, 175
S.W.3d at 750 n.48.

A.  Issue
4:  Aggravated Assault – 

Linking the Proper Mens Rea to
Each Conduct Element

In appellant’s fourth issue, he contends that the
instruction on the aggravated assault on a public servant count failed to link
the appropriate mens rea to each conduct element of the offense.  The abstract
portion, or the definitional portion, of the jury charge instructed the jury as
follows:

            A person commits aggravated assault when the
assault is committed against a person the actor knows is a public servant while
the public servant is lawfully discharging an official duty.

.        .        .

            A person acts intentionally, or with intent,
when it is his conscious objective or desire to engage in the conduct.

            A person acts knowingly, or with knowledge with
respect to the nature of his conduct or to circumstances surrounding his
conduct when he is aware of the nature of his conduct or that the circumstances
exist.  

            Furthermore, the application portion of
the charge instructed the jury as follows:

            Now, if you find from the evidence beyond a
reasonable doubt that on or about the 28th day of January, 2007, in McLennan
County, Texas, the defendant, Demetrius Carr, did then and there intentionally
or knowingly threaten J.W. Eslick with imminent bodily injury by pointing a
loaded firearm at or in the direction of J.W. Eslick, and did then and there
use or exhibit a deadly weapon, to wit:  a firearm during the commission of
said assault, and the defendant did then and there know that the said J.W.
Eslick was then and there a public servant, to-wit:  a police officer for the
City of Bellmead, Texas, and that said J.W. Eslick was then and there lawfully
discharging an official duty, to-wit:  responding to a motor vehicle collision,
then you will find the defendant guilty of Aggravated Assault on a Public
Servant, as charged in Count 1 of the indictment.          

Appellant contends that the jury charge should have directly
linked each conduct element to the appropriate mens rea.  Specifically,
appellant contends that there are three types of conduct—the nature of the
conduct, circumstances surrounding the conduct, and result of the conduct—and
the elements of aggravated assault on a public servant each requires different
conduct.  According to appellant, the element that the actor knew the victim
was a public servant falls under the “circumstances-surrounding-the-conduct” element,
placing the victim in fear is a “result-of-the-conduct” element, and using or
exhibiting a deadly weapon is a “nature-of-the-conduct” element.  Appellant
contends that the jury charge should have been tailored as follows:

            The following definition applies to mental
state as to whether or not the accused actually knew the person assaulted was a
public servant:  A person acts knowingly, or with knowledge, with respect to
the circumstances surrounding his conduct when he is aware that the
circumstances exist.

            The following definition applies to mental
state as to whether the victim was threatened or placed in fear of imminent
bodily injury or death:

            A person acts intentionally or with intent,
with respect to a result of his conduct when it is his conscious objective or
desire to cause the result.  

            A person acts knowingly or with knowledge, with
respect to a result of his conduct when he is aware that his conduct is
reasonably certain to cause the result. 

According to appellant’s proposed charge on appeal,
the jury should have been given a result-of-the-conduct instruction.

The Texas Penal Code provides three different ways to
commit an assault:  (1) intentionally, knowingly, or recklessly causing bodily
injury to another; (2) intentionally or knowingly threatening another with
imminent bodily injury; or (3) intentionally or knowingly causing physical
contact with another when the person knows or should reasonably believe that
the other will regard the contact as offensive or provocative.  Tex. Penal Code
Ann. § 22.01(a).  Assault by bodily injury is a result-oriented offense,
while assault by threat is a conduct-oriented offense.  Landrian v.
State, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008).  An aggravated assault
is committed when the offender commits an assault by threat and either (1)
causes serious bodily injury to another or (2) uses or exhibits a deadly weapon
during the commission of the assault.  Tex. Penal Code Ann. § 22.02(a).  In
this case, the indictment charged appellant with aggravated assault by threat.[2]  Thus, the
charged offense in this case had no required result.  See Landrian, 268
S.W.3d at 536; see also Johnson v. State, 271 S.W.3d 756, 761 (Tex.
App.—Waco 2008, pet. ref’d) (“[W]hen assault by threat is alleged, . . . the
focus is on the nature of the defendant’s conduct, rather than the result of
his conduct.”); Hall v. State, 145 S.W.3d 754, 758 (Tex. App.—Texarkana
2004, no pet.).  Here, the conduct at issue was conduct-oriented.  Because the
abstract portion of the charge recited conduct-oriented definitions—and omitted
result-oriented definitions—the charge properly instructed the jury on the mens
rea required for threatening a public servant with imminent bodily injury. 
See Landrian, 268 S.W.3d at 536; see also Johnson, 271 S.W.3d at
761; Guzman v. State, 988 S.W.2d 884, 887 (Tex. App.—Corpus Christi
1999, no pet.).  

The jury charge also properly instructed the jury on
the deadly weapon element.  Appellant contends that the instruction regarding
the deadly weapon element should have been as follows:

            The following instruction applies to mental
state as to use/exhibition of a deadly weapon:  An object is a deadly weapon if
(and only if) the person intends a use of the object in which it would be
capable of causing death or serious bodily injury. 

However, the culpable mental state of intent or
knowledge of aggravated assault relate to the assault element of making a
threat.  See Butler v. State, 928 S.W.2d 286, 288 (Tex. App.—Fort
Worth 1996,writ ref’d).  Thus, a second culpable mental state is not required
to be included with the deadly weapon element.  See id.; see also
Pass v. State, 634 S.W.2d 857, 860 (Tex. App.—San Antonio 1982,writ
ref’d) (holding that “a second culpable mental state in the aggravating portion
of an indictment for aggravated assault under [section] 22.02(a)(3) is not
required”).  We reject appellant’s argument.     

Appellant additionally argues that the charge was
confusing in that the application paragraphs failed to explicitly apply the
abstract law to the facts of the case.  The abstract portions of the jury
charge are designed to help the jury understand the meaning of concepts and
terms used in the charge’s application portions.  Degrate v. State, 86
S.W.3d 751, 752 (Tex. App.—Waco 2002, pet. ref’d) (quoting Plata v. State,
926 S.W.2d 300, 302 (Tex. Crim. App. 1996)).  A charge is adequate if it
contains an application paragraph authorizing a conviction under conditions
specified by other paragraphs of the charge to which the application paragraph
necessarily and unambiguously refers, or contains some logically consistent
combination of such paragraphs.  Caldwell v. State, 971 S.W.2d 663, 666
(Tex. App.—Dallas 1998, pet. ref’d).  Furthermore, a jury is authorized to
convict based on the application portion of a charge; an abstract charge on a
legal theory does not bring that theory before the jury unless the theory is
applied to the facts.  See Hughes v. State, 897 S.W.2d 285, 297 (Tex.
Crim. App. 1994).  If the application paragraph of a jury charge does not
incorporate a theory recited only in the abstract portion of the charge, a jury
cannot convict on that theory.  See id.    

Here, the abstract portion of the charge, as quoted
above, defined intentional and knowing conduct, and applied those definitions
to the application portion of the charge.   Because the charge contained an
application paragraph authorizing conviction under conditions specified in the
abstract definitions to which the application portion referred and was
logically consistent, we find no error in the challenged aspects of the
charge.  We overrule appellant’s fourth issue.

B.  Issue 5:  Aggravated
Assault – Comment on the Weight of the Evidence

In appellant’s fifth issue, he contends that there is
error in the jury charge because it stated that “a public servant means a
police officer.”  Appellant contends that this recitation was an improper
comment on the weight of the evidence.  The Code of Criminal Procedure mandates
that the trial court must deliver to the jury a written charge “not expressing
any opinion as to the weight of the evidence, not summing up the testimony [or]
discussing the facts.”  Code Crim. Proc. Ann. art. 36.14 (Vernon 2007).  An
instruction is a comment on the weight of the evidence if it singles out a
particular fact and instructs the jury it may consider that fact in determining
an issue in the case.  See Hawkins v. State, 656 S.W.2d 70, 73 (Tex.
Crim. App. 1983). 

“Public servant” is an essential element of the
offense charged under the statute, and the abstract and application portions of
the charge in this case identify “public servant” as an offense element.  See
Tex. Penal Code Ann. § 22.02(b)(2)(B).  The Penal Code defines “public servant”
as “an officer, employee, or agent of government.”  Id. § 1.07(a)(41)(A). 
Although “public servant” is defined under the Penal Code, the jury charge in
this case did not set forth the Penal Code’s definition.  The trial court
should have provided the statutory definition of “public servant,” not the
instruction that a public servant means a police officer.  While the
instruction, “a public servant means a police officer,” constitutes an accurate
statement of law,[3]
it magnifies a particular fact: a police officer is a public servant.  Because
the complained-of instruction emphasized a particular fact, giving unfair
emphasis to that fact, the trial court erred in instructing the jury that a
public servant is a police officer.  Finding error, we must now determine whether
the harm, if any, is so egregious that appellant was denied a fair and
impartial trial.  See Patrick v. State, 906 S.W.2d 481, 492 (Tex.
Crim. App. 1995).  In making this determination, we examine the entire charge,
the state of the evidence, including any contested issues, arguments of
counsel, and other relevant information.  Ngo, 175 S.W.3d at 750 n.48.

The jury charge required the jury to find beyond a
reasonable doubt that each element of the offense—including Eslick was a public
servant—was proven before convicting appellant.  And while the jury charge did
not provide the statutory definition of “public servant,” the instruction
placed Eslick within the meaning of “public servant” only if he was a police
officer.  Thus, the jury had to find beyond a reasonable doubt that Eslick was
a police officer before convicting appellant.  Furthermore, appellant did not
contest this particular issue.   The record contains undisputed evidence that
Eslick was in fact a police officer, he was in full uniform, arrived on the
scene in a marked unit, and identified himself as a police officer.  No one
questioned Eslick’s status, and appellant did not offer testimony disputing
Eslick’s status as a public servant.  Additionally, the fact that a police
officer is a public servant was not controverted.  Considering the relevant
portions of the record, we do not find any actual harm caused by the trial
court’s jury charge error.  Finding that the error was harmless under Almanza,
we overrule appellant’s fifth issue.  See Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1984) (concluding that unpreserved error must cause
egregious harm to warrant reversal). 

C.  Issue 6:  Aggravated Assault - Section 2.05 Presumption Instruction     

In appellant’s sixth issue, he contends that the trial
court reversibly erred in failing to instruct the jury on section 2.05 after
giving a section 22.02(c) instruction on a presumed fact.  Section 2.05
provides that if a statute establishes a presumption with respect to any fact,
the issue must be submitted to the jury and the trial court must charge the
jury:

(A)  that the facts giving rise to the presumption must be
proven beyond a reasonable doubt;

(B)  that if such facts are proven beyond a reasonable
doubt the jury may find that the element of the offense sought to be presumed
exists, but it is not bound to so find;

(C)  that even though the jury may find the existence of
such element, the [S]tate must prove beyond a reasonable doubt each of the
other elements of the offense charge; and 

(D)  if the jury has a reasonable doubt as to the existence
of a fact or facts giving rise to the presumption, the presumption fails and
the jury shall not consider the presumption for any purpose. 

Tex. Penal Code Ann. § 2.05(a)(2). 
Here, a section 2.05 instruction was not requested and not included in the
charge.  Such omission was error.  Finding error, we must now determine whether
the harm, if any, is so egregious that appellant was denied a fair and
impartial trial.  See Patrick, 906 S.W.2d at 492.  

The application paragraph instructed the jury that
before it could convict appellant, it had to find beyond a reasonable doubt
that (1) Officer Eslick was, at the time of the assault, a public servant,
namely a police officer for the City of Bellmead and (2) appellant knew Officer
Eslick was a public servant.  The undisputed evidence showed that Officer Eslick
was in full uniform and embarked from a marked vehicle when he approached
appellant.  Officer Eslick identified himself to appellant as an officer for
the Bellmead Police Department.  The evidence also showed appellant repeatedly
recognized that he was surrounded by police officers, stating “there are too
many laws” at the scene.  The jury had the opportunity to view and assess the
undisputed evidence that Officer Eslick was clearly identifiable as a police
officer at the time of the assault.  Under these circumstances, we cannot
conclude that appellant was denied a fair and impartial trial by the omission
of the section 2.05 presumption instruction.  See Rudd v. State, 921
S.W.2d 370, 373 (Tex. App.—Texarkana 1996,writ ref’d) (concluding that omission
of section 2.05 instruction was error but did not cause egregious harm because
great weight of evidence showed officers were physically close to defendant, in
uniform, and arrived in a marked police car).  We overrule appellant’s sixth
issue.                                      

D.  Issue
7: Possession with the Intent to Deliver – 

Linking Appropriate Mens Rea to
Each Conduct Element

In appellant’s seventh issue, he contends that the
instruction on the possession of cocaine with the intent to deliver count
failed to link the appropriate mens rea to each conduct element of the
offense—the application paragraph failed to explicitly apply the abstract law
to the facts of the case.  Appellant concedes that the abstract portion of the
charge contained the appropriate mens rea instruction and that the
application portion had the appropriate conduct instruction.  Appellant
contends, however, that the trial court should have tied the mens rea
instruction to each applicable element for context.

As discussed above, the abstract portions of the jury
charge are designed to help the jury understand the meaning of concepts and
terms used in the charge’s application portions.  Degrate, 86 S.W.3d at
752.  A charge is adequate if it contains an application paragraph that
authorizes a conviction under conditions specified by other paragraphs of the
charge to which the application paragraph necessarily and unambiguously refers,
or contains some logically consistent combination of such paragraphs.  Caldwell,
971 S.W.2d at 666.  Here, the abstract portion of the charge stated:

            Our law further provides that a person commits
an offense if he knowingly or intentionally possesses with intent to deliver a
controlled substance.  Cocaine is a controlled substance.

            “Delivery” means the actual or constructive
transfer from one person to another of a controlled substance, whether or not
there is an agency relationship.

            “Constructive transfer” is the transfer of a
controlled substance either belonging to an individual or under his direct or
indirect control, by some  other person or manner at the instance or direction
of the individual accused of such constructive transfer.  It also includes an
offer to sell a controlled substance.  Proof of an offer to sell must be
corroborated by a person other than the offeree or by evidence other than a
statement of the offense.

            “Possession” means actual care, custody,
control or management.  Possession is a voluntary act if the possessor
knowingly obtains or receives the thing possessed or is aware of his control of
the thing for a sufficient time to permit him to terminate his control.

.      .      .

            A person acts intentionally or with intent,
with respect to the nature of his conduct when it is his conscious objective or
desire to engage in the conduct.  

            A person acts knowingly or with knowledge, with
respect to the nature of his conduct or to circumstances surrounding his
conduct when he is aware of the nature of his conduct.    

These abstract definitions were applied to the
application paragraph, authorizing conviction if the jury found that appellant intentionally
or knowingly possessed cocaine with the intent to deliver.  Specifically,
the application portion stated:

[I]f you find from the evidence beyond a reasonable doubt
that . . . the defendant  . . . did intentionally or knowingly possess with
intent to deliver a controlled substance, namely, cocaine, with a deadly
weapon, in an amount of 4 grams or more but less than 200 grams, then you will
find the defendant guilty as charged in Count 3 of the indictment.  

Because the charge contained an application paragraph
authorizing conviction under conditions specified in the abstract definitions
to which the application portion referred and was logically consistent, we find
no error in the challenged aspects of the charge.  Accordingly, we overrule
appellant’s seventh issue.  Having overruled all of appellant’s issues, we
affirm the trial court’s judgment.

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

 

Panel consists of Chief Justice Hedges
and Justices Anderson and Christopher.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
The Penal Code defines a public servant as, inter alia, an officer,
employee, or agent of government.  Tex. Penal Code Ann. § 1.07(a)(41)(A)
(Vernon 2003).  





[2]
The indictment charged appellant as follows:

Defendant . . . did intentionally or knowingly threaten
J.W. Eslick with imminent bodily injury by pointing a loaded firearm at or in
the direction of J.W. Eslick, and did . . . use or exhibit a deadly weapon,
to-wit: a firearm during the commission of said assault, and . . . Defendant
did . . . know that the said J.W. Eslick was . . . a public servant, to-wit: a
police officer for the City of Bellmead, Texas . . . .





[3]
See Campbell, 128 S.W.3d at 668 (recognizing that “a ‘public
servant’ is a broad term including ‘peace officers’ and ‘police officers’”); Carriere,
84 S.W.3d at 757 (holding that a police officer is a public servant within the
meaning of the criminal retaliation statute); Hoitt, 28 S.W.3d at 165
(“A municipal police officer is a public servant within the meaning of the
Penal Code.”); McCoy, 932 S.W.2d at 723 (holding that a municipal police
officer is a public servant for purposes of the statute criminalizing
aggravated assault and retaliation against a public servant).